## Case No. 4,894.

### FOCKE et al. v. LAWRENCE.

[2 Blatchf. 508.] [1]

Circuit Court, S. D. New York. Nov., 1852.

Elias H. Ely, for plaintiffs.
J. Prescott Hall, Dist. Atty., for defendant.

BETTS, District Judge. The plaintiffs, merchants of Liverpool, shipped at that port three invoices of iron, in March, April and May, 1849. They took the owner's oath upon the invoices before the American consul at Liverpool, and swore that the iron was charged at the prices paid on actual purchase. On entry at New York, in May and June following, the invoice value was raised by the appraisers to the market prices of the iron at the dates of the respective invoices, and duties were exacted by the collector on that valuation, with the addition of a penalty. The importers subjoined to each entry a writ-

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

ten protest against the additional duty. The language of two of the entries was, "claiming to enter the iron at actual and invoice cost." That of the third was, "claiming to enter it according to the sworn invoice."

The case differs from that of Pierson v. Lawrence [Case No. 11,158], in this, that the plaintiffs were residents of Liverpool, and shipped the iron there on their own account. Their contracts of purchase were made with the manufacturers in Glasgow, October 30th, and November 1st, 1848, for future delivery, and the iron was all delivered at Liverpool in March and April, 1849. The plaintiffs offered no evidence against the correctness of the appraisers' valuation, taking the time of shipment as the time of purchase.

The plaintiffs urge, as in the case of Pierson v. Lawrence [supra], in avoidance of the appraisement, First, that the invoice, verified by the owners' oath, is conclusive proof of the purchase-price of the goods; secondly, that the course pointed out by the acts of congress, to be pursued on the appraisement of imports at the custom house, was not conformed to in this instance; thirdly, that no legal order to appraise was made. They also claim that the contracts of purchase were entered into in October and November, 1848; that the increased valuation and the imposition of the additional duty and penalty were all carried out at the custom house in obedience to a circular from the secretary of the treasury, and not by regular appraisement and the observance of the requirements of the revenue acts; that a part of the purchase was in praesenti, the plaintiffs having the right to an immediate delivery of the iron; and that, in that respect, this case is distinguishable from that of Pierson v. Lawrence, and from that of Pierson v. Maxwell [Case No. 11,159], where the purchases were prospective.

The plaintiffs proved, in this case, that an advance in the price of iron at Glasgow took place between the dates of the contracts of purchase and the shipments of the iron, but there does not appear to have been any distinct proof of the time or amount of that advance, nor of the market value of the iron in Glasgow at the period of the contracts, otherwise than by the testimony of a broker resident at Liverpool. These facts are stated in this opinion, not as the basis of the judgment of the court, but that the case may appear substantially as presented to the court.

Our decision is placed essentially upon the terms of the protests. The plaintiffs cannot go beyond or out of those, with their objections to the exaction of duties. If they supposed that the officers of the customs had committed any irregularity in ascertaining the dutiable value of the iron, or if they desired more formal action on the part of the collector, the protests should have called his attention to the particular omission or irregularity complained of. In the case of Barker v. Lawrence [Case No. 991], cited by the

plaintiffs' counsel, in which the duties paid were recovered because of an irregular appraisement, no question was raised by the defendant as to the sufficiency of the protest.

The presumption is, that the duties were levied according to law, and the collector is not personally subject to an action unless he exacts them against the protest of the importer, "setting forth distinctly and specifically the grounds of objection to the payment thereof." Lawrence v. Caswell, 13 How. [54 U. S.] 488. This is demanded by the statute, and it is a wise safeguard to a public functionary who exercises a very delicate and difficult trust, while it at the same time affords every reasonable protection to the rights of the importer. This court has repeatedly expressed its purpose to adhere to the language and spirit of this requirement of the law; and, applying that provision to this case, it is clear to our minds, that the plaintiffs have not shown that the collector violated any right set up by their protests, and which was secured to them by law. The protests import that the plaintiffs claimed the invoice charges to be conclusive evidence of the purchase-price and market value of the goods, but they give no intimation to the collector that the purchases were at a time different from the dates of the invoices, or that the market prices at the periods of purchase were different from what they were at the times of the shipments or at the dates of the invoices.

It is a great misapprehension to suppose that the collector is bound to take the entry of goods at the valuation of the invoice, supported by the owner's oath. His duty is directly the contrary. The 16th section of the act of August 30, 1842 (5 Stat. 563), directs the collector to cause goods subject to ad valorem duties to be appraised, and specifically enacts that it shall be the duty of the appraisers, or of the collector, by all reasonable ways and means in their power, to ascertain, estimate and appraise the true and actual market value and wholesale price of the goods, at the time purchased, and in the principal markets of the country whence the same shall have been imported into the United States, "any invoice or affidavit thereto to the contrary notwithstanding." To enable the importer to avoid the penalty of twenty per cent., when the appraisement exceeds the invoice value by ten per cent., the eighth section of the act of July 30, 1846 (9 Stat. 43), permits the importer to make an addition to the entry price. That provision goes upon the assumption that the invoice price in no way determines the value of the goods.

If the plaintiffs were entitled to enter the goods at their market value at the place where purchased (Maxwell v. Griswold, 10 How. [51 U. S.] 242; Greely v. Thompson. Id. 225), still, the collector was not bound to know that the place of the purchases was different from that of the shipments, nor, more especially, that the times of the pur-

chases were different from the dates of the invoices, unless he was expressly notified of such facts by the protests. It does not appear that he or the appraisers had any notice whatever of such facts. A verbal notice would be of no avail, even if the court might be authorized to imply one, for the plaintiffs would be excluded from all advantage under it by the express provisions of the act of February 26, 1845 (5 Stat. 727), which require it to be in writing.

We adhere to the judgment rendered in this case at the last term, finding that the plaintiffs, by their protests, point to no fact which in law can invalidate the appraisement, and also that, by the entries and the invoices, the collector was justified in taking the place and times of shipment as those of the purchases of the goods in question.

Judgment for the defendant.